CONNERS et al. v. UNITED STATES.

(Circuit Court, D. Massachusetts. June 3, 1904.)

No. 1,257.

1. BUILDING CONTRACT—EXTRA COMPENSATION—RISKS ASSUMED BY CONTRACTOR.

A proposal for bids for a contract for the construction of a building for the United States contained the following provision: "All necessary excavation is to be done and is to extend at least four feet below the surface and to bedrock. * * * Levels of the rock at various points are shown approximately on the plans, but the bidder must satisfy himself of the accuracy of these and of the rock surfaces in general." *Held* that, in the absence of some extraordinary circumstance, which would entitle him to equitable relief, the contractor assumed the risk of the depth of excavation, and could not recover extra pay because the levels shown on the plans were inaccurate, and it was necessary to go to a greater depth than four feet to reach bedrock.

2. SAME—CHANGES IN PLANS.

A contract for the construction of a building for the United States construed with reference to the manner of determining the amount to be deducted from the contract price because of a change in the plans by the government by which certain work was omitted.

3. SAME.

Proposals for the construction of a government building were invited in three different forms: First, for the complete work; second, for the complete work omitting a railroad track; third, for the complete work omitting fireproofing. Plaintiffs submitted in a consolidated form a proposition to do the complete work for a specified price, with a deduction of a certain amount if the railroad was omitted, and a deduction of a different amount if fireproofing was omitted. The government accepted the proposition with the deduction on account of the railroad, taking no notice of the deduction for fireproofing proposed. *Held*, that what was submitted with reference to fireproofing was ineffectual,

130 F.—39

and there was no contract for a deduction of the sum proposed therefor, upon a change in the plans by which fireproofing was omitted.

**4. SAME—MODE OF FIXING COMPENSATION.**

The rule applied that provisions in a building contract that the increased or diminished compensation of the contractor incident to changes in the plans shall be fixed by a competent person or tribunal named, whose decision shall be binding, are valid.

At Law.    Trial to the court.    Findings of law and fact by the court.

### Findings of Law.

(1) The findings of law are sufficiently stated in the opinion filed this day in this case, which the court adopts as a part hereof.

### Findings of Fact.

(1) The court adopts as a part of these findings the "agreed facts" filed February 25, 1904.

(2) The court finds that, as alleged in their declaration, the plaintiffs were compelled to excavate for the foundations more than four feet below the surface in order to reach bedrock, and at points to the depth of fourteen feet, as alleged by them, and to fill the excavation to within four feet of the surface with concrete; and that the same involved ninety-eight and one-half yards of excavation and concrete, as stated in their complaint; and that the cost of doing the same, with the necessary incidentals thereof, as well as the reasonable worth thereof, was six hundred forty-nine dollars and ninety-four cents. The court, however, does not find that there was any improper testing of the ground, as alleged in said complaint, or that the said testing was insufficient, except so far as insufficiency may be implied, if it can be implied, from the following additional facts: The testing of the ground by the United States was such as was reasonable and usual, but it failed, without fault on the part of the United States, to disclose the actual depth at the point at which the plaintiffs were compelled to excavate, as alleged in said complaint.

(3) The court does not find that bedrock was not reached at an average depth of two feet below the surface where the foundations were laid; nor does it find that the cost of excavating and filling with concrete, as alleged in the plaintiffs' complaint, was greater than the cost to the plaintiffs would have been if bedrock had been found at the same locality at two feet below the surface, involving thereby excavating the rock to a point at least four feet in depth; nor does it find that the entire cost to the plaintiffs of excavating and filling with concrete, as the work was actually done, or the reasonable worth thereof, was greater than would have been if the entire excavation had necessarily been made to the depth of four feet at all points.

(4) The court finds that the contract required the plaintiffs to excavate at all points to a depth of at least four feet, even though to reach that depth excavation was necessarily made through solid ledge.

(5) All the foregoing relates in no part to the two pits referred to in the contract, but to excavation for foundations, to which particular excavation the court finds the plaintiffs' complaint relates exclusively.

(6) The court finds that, subsequent to the bid stated in the "agreed facts" and the acceptance thereof by Endicott under date of April 28, 1900, a formal contract covering the work to be done by the plaintiffs was executed, which contract was put in evidence before the court.

(7) The court finds that that contract contained the following provisions, among others:

"Third. The party of the first part further agrees that if during the progress of the work it shall be deemed, by the party of the second part, necessary or desirable to make any changes or modifications in the said plans and specifications, affecting the cost of the work to be done hereunder, said changes or modifications, and the amount of the increased or diminished compensation to be paid the party of the first part in consequence thereof, shall be stipulated and agreed to in writing by the parties to the contract before the work contemplated by such changes or modifications is begun; and such increased or

diminished compensation shall, when exceeding $300, be assessed by a board of naval officers appointed for the purpose, and shall be based upon the actual cost."

"Fourteen. Changes. Should it be to the interests of the Government to make any changes in the plans or specifications exceeding $300 in value, the increased or decreased compensation to which the contractor may be entitled is to be determined by a board of three naval officers, and the contractor shall be bound by its decision, if the decision of the Board is approved by the Chief of Bureau of Yards and Docks, and no further payments shall be made until its decision, so approved, shall be accepted by the contractor in writing. Changes in plans or specifications not exceeding $300 in value may be made by mutual agreement, in writing, between the contractor and the Chief of Bureau of Yards and Docks."

(8) The court finds that under the circumstances stated in the "agreed facts" the omission of fireproofing was not within the foregoing fourteenth paragraph relating to "changes," but was a necessity arising from mutual mistake; that, therefore, the ascertainment of decreased compensation at the sum of thirty-seven hundred forty dollars by the board of three naval officers, approved by the chief of bureau of yards and docks, as stated in the "agreed facts," was ineffectual, and not appropriate to the existing conditions; and that under the existing conditions the amount by which the compensation stipulated in the contract should be decreased was ascertainable, and is to be ascertained, by the rules of common law, independently of any special provision of the contract.

(9) The court, however, finds that no contract was ever made between the plaintiffs and the United States by virtue of which the decreased compensation on account of the omission of fireproofing should be fixed at nine hundred dollars, or any other sum; so that, therefore, so much of the plaintiffs' complaint as alleges that the decreased compensation should be fixed at that amount, is inapplicable to the existing conditions.

(10) The court therefore further finds that on the pleadings and the proofs submitted it cannot pass on the merits of the case with reference to determining the amount of decreased compensation on account of the want of fireproofing, if the compensation should be decreased on that account; so that, therefore, in so far as the judgment in this case relates to the matter of decreased compensation on account of fireproofing, the merits are not touched; but the case goes off on a variance, which should not bar, and does not bar, a subsequent complaint framed in accordance with the existing conditions.

Bernard D. O'Connell and Hiram P. Harriman, for complainants.

The United States Attorney and William H. Garland, Asst. U. S. Atty.

PUTNAM, Circuit Judge. This is a complaint brought against the United States, arising out of a contract between the plaintiffs and the United States for the construction of a foundry, including the excavation, at the Navy Yard at Kittery, Me., the contract having been negotiated between the plaintiffs and the Navy Department. The complaint concerns two items: First, a claim of $649.94 for excavation for the foundations in excess of the approximate excavation shown by the plans and specifications. The plaintiffs allege that the plans and specifications showed an average depth of excavation of two feet to reach bedrock, which the plaintiffs were required by the contract to reach, while in fact at one point they were compelled to excavate to a depth of fourteen feet. The other relates to the fact that the United States have deducted from the contract price of the work, and refuse to pay the plaintiffs, $3,605, as the alleged decreased compensation arising from the fact that certain fireproofing called for by the contract was omitted.

So far as concerns the claim for increased compensation growing out of the alleged excessive excavation, a provision of the contract, which is also stated in the "agreed facts," is as follows:

"All necessary excavation is to be done and is to extend at least 4 feet below the surface and to bedrock; two pits are to be excavated to depths as shown on plan. Levels of the rock at various points are shown approximately on the plans, but the bidder must satisfy himself of the accuracy of these and of the rock surfaces in general."

This is a usual and plain provision, by which the contractor was clearly bound to assume the risk of the depth of the excavation, unless under some extraordinary circumstances, where there might possibly be relief on equitable principles. There are no such circumstances in any view of the present case. Moreover, the court is unable to perceive that, even at this particular portion of the work, the excavation required any additional cost beyond what might have been caused under circumstances which the contractors clearly consented to assume, pointed out in this case in the "findings of fact" filed herewith, or that there are any circumstances which, on the whole, show that the entire work of excavating the foundations imposed any burden on the plaintiffs beyond what might reasonably have been expected to have been the average thereof. On that point, therefore, the court is clear that the case is with the United States.

The other claim of the plaintiffs is that the United States deducted from the contract price of the work $3,605, estimated on account of the decreased cost by reason of the omission of certain fireproofing provided for by the contract, which $3,605 the United States has not yet paid the plaintiffs, so that the plaintiffs now claim to recover the same. The contract contains the following paragraphs:

"Third. The party of the first part further agrees that if during the progress of the work it shall be deemed, by the party of the second part, necessary or desirable to make any changes or modifications in the said plans and specifications, affecting the cost of the work to be done hereunder, said changes or modifications, and the amount of the increased or diminished compensation to be paid the party of the first part in consequence thereof, shall be stipulated and agreed to in writing by the parties to the contract before the work contemplated by such changes or modifications is begun; and such increased or diminished compensation shall, when exceeding $300, be assessed by a board of naval officers appointed for the purpose, and shall be based upon the actual cost."

"Fourteen. Changes. Should it be to the interests of the Government to make any changes in the plans or specifications exceeding $300 in value, the increased or decreased compensation to which the contractor may be entitled is to be determined by a board of three naval officers, and the contractor shall be bound by its decision, if the decision of the board is approved by the Chief of Bureau of Yards and Docks, and no further payments shall be made until its decision, so approved, shall be accepted by the contractor in writing. Changes in plans and specifications not exceeding $300 in value may be made by mutual agreement, in writing, between the contractor and the Chief of Bureau of Yards and Docks."

The fireproofing was omitted, and the United States claimed a right to proceed in accordance with paragraph 14. It is agreed that a board of three naval officers was appointed as provided in the paragraph, which board estimated the decreased compensation on account of the omission of the fireproofing at the sum of $3,605, already

named, and that the decision of the board was approved by the chief of bureau of yards and docks, as further provided in that paragraph. There is nothing in the case to 'show that the plaintiffs assented to this method of ascertainment, or even knew thereof prior to the refusal of the United States on this account to pay the contract price. It is agreed that the lumber furnished by the contractor and accepted by the United States, which was to be fireproofed, was yellow pine and that, after experimenting, it was ascertained that this particular kind of lumber was not fit for the process of fireproofing, and that its value for the purpose for which it was intended would not be increased thereby. It is also agreed that thereupon it was decided by the chief of bureau of yards and docks, who, for the purposes of this contract, represented the United States, not to insist on the fireproofing.

Paragraph 14 is limited by its express terms and reasonable construction to changes made in the interest of the United States, and has no relation to changes arising out of unforeseen necessities involving mutual mistake like that in question here. That paragraph 14 does not cover the entire subject-matter so far as to reach the case at bar is plain, from the fact that paragraph third supplements it to some extent. That relates to changes "necessary or desirable," and might, perhaps, therefore, be construed to meet the present case if it had been used for that purpose. It, however, requires that the assessment by the board "shall be based upon the actual cost"—a provision not found in paragraph 14, and of an essential character. Moreover, it appears by the "agreed facts" that the United States proceeded under paragraph 14. Therefore in no event can it be said that there has been any ascertainment by any board of naval officers or any other board which reaches this case.

On the other hand, however, the plaintiffs' complaint alleges that there was a contract by virtue of which, in case fireproofing was omitted, $900 should be assessed against them as the equivalent thereof, and it bases the plaintiffs' claim expressly and exclusively on that proposition. It is clear that there never was any such contract. The chief of bureau of yards and docks invited proposals for the work in three different forms: First, a price for the complete work; second, a price for the complete work omitting a railroad track; and, third, a price for the complete work omitting fireproofing. The plaintiffs submitted in a consolidated form a proposition to do the complete work for $39,820, with a deduction of $600 if the railroad was omitted, and a deduction of $900 if fireproofing was omitted. Omitting the railroad alone, left the bid $39,220. The bureau telegraphed the plaintiffs as follows:

"Your bid for foundry, Portsmouth, New Hampshire, Item 3, thirty-nine thousand two hundred twenty, is accepted."

The navy yard, of course, is at Kittery, instead of at Portsmouth, but it is ordinarily spoken of as the "Portsmouth Yard." Item 3 was the item asking for bids omitting the railroad, and nothing else. Therefore the bureau took no notice of the deduction for fireproofing proposed by the plaintiffs, and, in order

to make positive and clear what the department intended, it named specifically in its telegram the price, $39,220, which was exactly the bid less the deduction on account of the railroad. Therefore it is entirely clear that whatever was submitted with reference to fireproofing was ineffectual, and therefore, further, as already said, no contract was ever made in reference thereto. It follows that, as the plaintiffs rest their case by their pleadings and by the "agreed facts" on a claim that there was a specific contract in reference to the omission of the fireproofing at the sum of $900, the present complaint cannot be maintained, and must be dismissed. Nevertheless, as, on the record as made, neither party to the controversy has submitted to us the case according to its true merits, and as the pleadings and the "agreed facts" and proofs, as they come before us, do not permit us to pass on the merits, the case goes off, so far as this claim of $3,605 is concerned, on a variance, and ought not to bar a new complaint based on the existing conditions, if one is hereafter made. So far, however, as the claim of the plaintiffs to increased compensation for excavation is concerned, we reject it on its merits, it not being sustainable on any view which may be taken of the pleadings, either on this complaint or any other.

The plaintiffs maintain that the provisions of paragraphs 3 and 14 are ineffectual, on the ordinary rule that an executory agreement aimed at depriving the courts of jurisdiction over a controversy is invalid. It is well settled, however, that this does not apply to agreements of the character found in this contract, even if the ascertainment is to be made by an engineer or other person, whose position entitles him to credit as impartial and competent, although nominally in the employment of one of the parties. This exception to the general rule has been stated by the Supreme Court in its most substantial phases in Martinsburg & Potomac Railroad Company v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255, which case has been subsequently reaffirmed and broadly applied by that court. So far as the federal courts are concerned, this is beyond possibility of controversy.

Let there be a judgment for the United States.